OPINION
{¶ 1} Sally Josephson filed this action in mandamus seeking a writ which would compel the Industrial Commission of Ohio ("commission") to reinstate her temporary total disability ("TTD") compensation because she is no longer at maximum medical improvement ("MMI").
 {¶ 2} In accord with Loc.R. 12(M), the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which includes a recommendation that we grant the requested relief. (Attached as Appendix A.)
 {¶ 3} Counsel for The Ohio State University, Ms. Josephson's employer, have filed objections to the magistrate's decision. Counsel for the commission have also filed objections. Counsel for Ms. Josephson has filed a brief in response. The case is now before the court for a full, independent review.
 {¶ 4} Ms. Josephson was injured on March 31, 1999. She was initially awarded TTD compensation. Before she returned to work, she was diagnosed with cancer. While fighting cancer, she still pursued rehabilitation in hopes of returning to work. Eventually, her chemotherapy made her too tired to continue rehabilitation for her back problems, which were the injuries sustained at work.
 {¶ 5} Because her back condition was not improving and could not improve while she had no energy to work at improving it, she temporarily was at a medical plateau with respect to the condition that prevented her from working. In other words, she had reached MMI with respect to her back condition. As a result, her TTD compensation was terminated.
 {¶ 6} Ms. Josephson was eventually able to defeat her cancer and then was ready to make improvement on her back condition. Both her treating physician for her back and her oncologist certified that she was able to pursue physical therapy and pursue a program of work conditioning.
 {¶ 7} Both Ms. Josephson's managed care organization and the Ohio Bureau of Workers' Compensation resisted her efforts at pursuing rehabilitation. Eventually, a district hearing officer authorized her request to resume rehabilitation.
 {¶ 8} Next, Ms. Josephson sought reinstatement of her TTD because she felt that her victory over cancer had removed the roadblock to her recovery from her back condition. With that roadblock removed, she felt she was no longer at MMI but was facing improvement.
 {¶ 9} A district hearing ordered reinstatement of TTD compensation, but a staff hearing officer disagreed. Hence, this mandamus action was filed.
 {¶ 10} This court's magistrate has well presented the reasons why Ms. Josephson's TTD compensation should be reinstated. In response to the magistrate's decision, counsel for the commission argue that Ms. Josephson's inability to work toward improvement of her back condition and toward relief from the pain she was experiencing can somehow be separated from the adjudication of her reaching MMI. We do not see these issues as separable.
 {¶ 11} Counsel for The Ohio State University make similar arguments, suggesting that treatment for the cancer did not interrupt Ms. Josephson's physical treatment for her back sprain. This suggestion overlooks the debilitating effects of chemotherapy on a cancer patient's red blood cell count and hence on the cancer patient's energy level.
 {¶ 12} Abram Sadaka, M.D., whose report was the basis for finding Ms. Josephson to have reached MMI, found:
 {¶ 13} "That claimant finding today shows that she has long reached MMI for the allowed condition in this claim. This is an almost a year and a half injury. Due to her cancer which was diagnosed 9 months ago, she was unable to participate in a work hardening program. Today, she does not appear to be interested in work hardening at all. She is more concerned about her cancer treatment than anything else."
 {¶ 14} Again, we believe that the magistrate's decision reaches the correct conclusion when it recommends that a writ of mandamus ordering reinstatement of TTD compensation be granted. We overrule both sets of objections to the magistrate's decision. We adopt the findings of fact and conclusions of law contained in the magistrate's decision and issue a writ of mandamus ordering reinstatement of TTD compensation effective February 20, 2000.
Objections overruled; writ granted.
LAZARUS and BRYANT, JJ., concur.
 IN MANDAMUS {¶ 15} Relator, Sally Josephson, filed this original action asking the court to issue a writ of mandamus compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for reinstatement of compensation for temporary total disability ("TTD") and to issue an order granting the requested compensation.
Findings of Fact:
 {¶ 16} 1. On March 31, 1999, Sally Josephson ("claimant") sustained a work-related injury and sustained a lumbar sprain and numerous contusions. She was awarded TTD compensation.
 {¶ 17} 2. In December 1999, claimant was diagnosed with cancer, and she had surgery for the cancer in January 2000.
 {¶ 18} 3. During this period, claimant continued to receive TTD. In the spring/summer of 2000, she began participation in a rehabilitation program at the J. Leonard Camera Center and received living-maintenance benefits during that time.
 {¶ 19} 4. On July 27, 2000, claimant's participation in the rehabilitation program was terminated, by mutual agreement, because her chemotherapy made her too tired, and she needed to focus on her recovery from cancer rather than completing the work hardening program for her lumbar srrain:
 {¶ 20} "Ms. Josephson was just about to complete the Work Hardening Program at the BWC Rehab. Center when she was re-referred to this case manager on 6/12/00. * * * Of 4 possible Job Club meetings, she attended one partial meeting. Our biggest concern was that Ms. Josephson has begun chemotherapy for cancer that was diagnosed during the latter part of 1999. She had surgery for this diagnosis in January 2000, but chose not to follow up with chemotherapy treatments until now. The treatments have caused her to feel very weak and tired, and have prevented her from giving full effort while in Job Search. Her levels of participation have been minimal. * * * All parties agree that Ms. Josephson should concentrate now on her recovery from cancer, and be re-referred to Voc. Rehab. when she is no longer having problems with side effects from the treatments. Ms. Josephson is in agreement with this decision."
 {¶ 21} 5. Due to claimant's withdrawal from rehabilitation, the Bureau of Workers' Compensation referred her for an examination to determine whether the lumbar sprain had reached maximum medical improvement ("MMI"). On August 23, 2000, claimant was examined by Akram Sadaka, M.D., who noted that claimant's completion of the work hardening program had been interrupted by her cancer treatment and that she was currently engaged in cancer treatment and was not interested in pursuing rehabilitation for her back. Accordingly, he concluded that the lumbar sprain had reached MMI.
 {¶ 22} 6. On November 7, 2000, a district hearing officer ("DHO") terminated TTD based on Dr. Sadaka's report.
 {¶ 23} 7. Claimant recovered from the cancer surgery and chemotherapy. On February 6, 2001, she visited her physician, William Adrion, M.D., stating that she wanted to resume physical therapy to strengthen her back, which was weak and painful.
 {¶ 24} 8. Dr. Adrion filed a request that claimant be authorized to return to a rehabilitation center to complete her program of work conditioning. In addition, claimant's oncologist, Lynn Eaton, M.D., certified that claimant was capable of participating in physical therapy and exercise.
 {¶ 25} 9. The managed care organization denied rehabilitation, as did the bureau, but a DHO authorized the request in September 2001.
 {¶ 26} 10. Claimant was referred to VocWorks. The written plan states the purpose of her rehabilitation program, which included physical therapy and work conditioning:
 {¶ 27} "* * * She has recently completed a physical therapy program at Health South and will be moving into a Work Conditioning Program on 2/8/01. This program has been pre-authorized * * *. The main goals of the Work Conditioning Program will be to decrease pain levels and increase general function and physical capacities."
 {¶ 28} 11. In December 2001, claimant filed a motion requesting reinstatement of TTD compensation as of February 20, 2001. She argued that her physical therapy and rehabilitation had been interrupted by treatment for cancer, and that although she had withdrawn from rehabilitation due to illness, she was ready to resume the program to obtain an increase of function and physical capacities. Claimant relied on the above-referenced reports as well as a C-84 report completed by Dr. Adrion.
 {¶ 29} 12. In April 2002, a DHO reinstated TTD, finding that there were new and changed circumstances justifying a resumption of TTD, in that claimant's cancer no longer interfered with her ability to participate in physical therapy and because rehabilitation had been formally approved.
 {¶ 30} 13. A staff hearing officer ("SHO") reversed, finding that, although there was additional treatment for claimant's injuries, the conservative treatment did not support a new period of TTD. Further appeal was refused.
Conclusions of Law:
 {¶ 31} In this original action, claimant does not challenge the commission's termination of TTD after she left the rehabilitation program. Rather, she asserts that the commission's refusal to reinstate TTD when she resumed her rehabilitation program was an abuse of discretion. The magistrate agrees. The commission was within its discretion to terminate TTD after claimant withdrew from her physical rehabilitation program due to a serious illness, but, when circumstances changed and claimant was capable of resuming her physical rehabilitation and sought to do so, she was entitled to a resumption of TTD while she completed her rehabilitation.
 {¶ 32} Under R.C. 4123.56(A), a claimant who has reached MMI is no longer entitled to TTD compensation. Under Ohio Adm. Code 4121-3-32(A)(1), MMI is defined as:
 {¶ 33} "* * * [A] treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. A claimant may need supportive treatment to maintain this level of function."
 {¶ 34} However, a claimant is not required to undergo physical therapy or surgery that could improve an allowed condition. In situations where physical therapy or surgery has been recommended to improve functional capacity but claimant chooses to forego it, the claimant may be deemed to have reached MMI in the absence of the recommended therapy or treatment.
 {¶ 35} A termination of TTD, however, does not preclude a resumption of TTD if circumstances change. Under R.C. 4123.52, the commission has authority to modify its orders, and one of the grounds that justifies a modification is that "new and changed circumstances" have arisen. See, e.g., State ex rel. B C Machine Co. v. Indus. Comm. (1992), 65 Ohio St.3d 538 (explaining that, under R.C. 4123.52, the commission has the power to modify a final order if it finds a mistake of fact or law in the order, fraud in obtaining the order, the arising of new and changed circumstances, etc.).
 {¶ 36} Accordingly, pursuant to R.C. 4123.52, a termination of TTD compensation based on MMI does not prevent a subsequent award of compensation if there are new and changed circumstances. There are several types of changes that permit reinstatement. For example, if the claimant experiences a flare-up of his allowed condition that temporarily and totally disables him, he is eligible for reinstatement of TTD. State ex rel. Bing v. Indus. Comm. (1991), 61 Ohio St.3d 424 (relying on commission's continuing jurisdiction under R.C. 4123.52 to modify decisions when there is a change of circumstances). Similarly, the court stated in State ex rel. Navistar Internatl. Transp. Corp. v. Indus. Comm. (1993), 66 Ohio St.3d 267, that, when TTD is terminated on the basis of a return to work, a subsequent inability to work can warrant an additional period of disability compensation. In addition, the requisite change in circumstances may include surgery for the allowed condition that temporarily and totally disables the claimant. In addition, an allowance of a previously disallowed condition may permit the commission to alter a prior denial of TTD.
 {¶ 37} In the present action, there is no question that the commission was entitled to terminate TTD after claimant withdrew from her rehabilitation program for reasons unrelated to her industrial injury. That is, the commission was within its discretion to terminate TTD on the basis of MMI as found by Dr. Sadaka. Therefore, the focus in this action is claimant's request for reinstatement of TTD, which was based on her resumption of the interrupted rehabilitation and her participation in a rehabilitation program to increase her physical function and capacities and assist her in returning to employment.
 {¶ 38} Thus, the questions before the commission were (1) whether there was a change in circumstances and (2) whether claimant's function and physical capacity could be improved by the therapy and rehabilitation. The circumstances surrounding the termination of TTD included a voluntary withdrawal from rehabilitation that triggered an examination and termination of TTD. Dr. Sadaka, in giving his opinion in the summer of 2000, based MMI in part on claimant's lack of interest in completing her work hardening program — circumstances that no longer existed as of February 2001.
 {¶ 39} However, within a year, circumstances had changed significantly. Claimant had recovered from chemotherapy, and she filed evidence that she was now ready, willing and able to resume rehabilitation for her allowed condition. Moreover, in authorizing the requested physical therapy and rehabilitation, the commission necessarily found that the proposed rehabilitation program was necessary to treat the allowed condition. The written plan made clear that the program was designed to improve function and physical capacity.
 {¶ 40} The Bing decision stands for the proposition that TTD may be reinstated when there are new and changed circumstances. The present action does not present a classic Bing or Navistar scenario because the change in circumstances did not relate to a worsening of the allowed condition, but the question before the commission was not whether there was a Bing flare-up or a Navistar relapse. The issue was whether there were "new and changed circumstances" that justified a reinstatement of TTD under R.C. 4123.52. Accordingly, because there are various types of new and changed circumstances that may arise, claimant's request could not be decided by focusing solely on whether she sustained a worsening of her allowed condition.
 {¶ 41} In the present action, claimant presented evidence of a change in circumstances between summer 2000 and February 2001. During that summer, she was obliged to interrupt her rehabilitation due to chemotherapy, but circumstances materially changed by February 2001, when she had recovered from chemotherapy and was physically capable of resuming rehabilitation. No evidence contradicts the evidence of recovery from chemotherapy and newly regained ability to participate in rehabilitation, and a rehabilitation program to improve physical function/capacity, which was approved. The standard applied by the SHO constituted an abuse of discretion. Although the change in circumstances was not a flare-up of her allowed condition, it was a material change in circumstances.
 {¶ 42} Accordingly, the commission abused its discretion in denying reinstatement of TTD. The magistrate recommends that the court grant a writ of mandamus directing the commission to vacate the order of its SHO and to reinstate TTD as of claimant's resumption of her rehabilitation program.